In re: ANTHONY LYNN REYES, JR.,                                    No. 25-11540-j7

     Debtors.

---

SCOTT A. RICHTER, et.al.,

     Plaintiffs,

v.                                                                Adversary No. 26-1008-j

ANTHONY LYNN REYES, JR.,

     Defendant.

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on the Motion to Dismiss Complaint Under rule 12(b)(6), or in the Alternative, for More Definite Statement Under rule 12(e) (Doc. 8 – the "Motion to Dismiss or for a More Definite Statement" or "Motion") filed by Defendant Anthony Lynn Reyes, Jr., *pro se*. Defendant requests the Court to dismiss Plaintiffs' claims objecting to discharge under 11 U.S.C. §727(a) and objecting to dischargeability under 11 U.S.C. § 523(a)(6) (Doc. 1 – the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(6)[1] for failure to state a claim upon which relief can be granted. Alternatively, Defendant requests the Court to order Plaintiffs Scott A. Richter (Mr. Richter) and Media Breakaway LLC, dba The Big Jackpot ("TBJ") to file a more definite statement pursuant to Fed. R. Civ. P. 12(e).[2] Plaintiffs filed an objection to the Motion to Dismiss (Doc. 9 – the "Objection"). No reply was filed. Having reviewed the Complaint and

---

[1] Rule 12(b)(6) is applicable to this adversary proceeding under Fed. R. Bankr. P. 7012.
[2] Rule 12(e) is applicable to this adversary proceeding under Fed. R. Bankr. P. 7012.

considered the Motion to Dismiss or for a More Definite Statement and the Objection, the Court will deny the Motion.[3]

<u>Claims and Factual Allegations Asserted in the Complaint</u>[4]

The Complaint consists of five counts asserting the following claims: 1) objection to discharge pursuant to 11 U.S.C. §727(a);[5] 2) defamation and libel *per se*; 3) tortious interference with performance of a contract; 4) intentional infliction of emotional distress; and 5) objection to the dischargeability of a particular debt pursuant to § 523(a)(6).

The Complaint alleges that Defendant listed no vehicles in his initial or amended schedules, yet testified in a state court proceeding about driving a Tesla, and, at his § 341 meeting of creditors, stated that his girlfriend owned the Tesla, yet he did not disclose on his Statement of Financial Affairs that he possessed any property owned by someone else.[6] The Complaint also identifies 1) a 2026 Chevrolet Silverado that Defendant did not disclose on his bankruptcy schedules that Defendant has recently displayed on numerous social media posts as a personal reward for "hard work," and 2) a commercial t-shirt printing machine that Defendant testified about in a prior state court action that was not disclosed in Defendant's initial Schedules, but was later reported in Defendant's amended schedules.[7] The Complaint also alleges that Defendant did not list any income from gambling and did not list any gambling

---

[3] The Motion to Dismiss includes a request to dismiss Plaintiffs' non-dischargeability claim under § 523(a)(2)(A). Although the introductory paragraph in the Complaint asserts that the debts Defendant owes to Plaintiffs are nondischargeable under § 523(a)(2)(A), none of the counts in the Complaint assert a non-dischargeability claim under § 523(a)(2)(A). Plaintiffs' Objection confirms that Plaintiffs did not asset a claim under § 523(a)(2)(A) and do not intend to seek relief under § 523(a)(2)(A). *See* Objection, p. 1.

[4] The factual allegations recited in this section are not comprehensive. The Complaint contains one-hundred thirty-nine numbered paragraphs. Paragraphs 1 thru 115 detail each of the facts upon which Plaintiffs' claims are based.

[5] References to "section(s)," "§" or "§§" in this Memorandum Opinion are to Title 11 of the United States Code, unless otherwise stated.

[6] *See* Complaint, ¶¶ 106, 107.

[7] *See* Complaint, ¶¶ 103, 105.

losses in his Statement of Financial Affairs, yet posted on various social media platforms ongoing high-stakes gambling, and statements that he won a $22,000.00 jackpot in 2025.[8] The Complaint alleges that defendant withheld recorded information regarding his property and financial affairs from the Chapter 7 Trustee, and that while he reported in his Statement of Financial Affairs that his sole income was from wages and employment, he has posted materials on social media platforms regarding high-stakes gambling, and claimed gambling winnings.[9]

The Complaint alleges further that Defendant published false and defamatory statements about Mr. Richter on various social media platforms.[10] The Complaint identifies specific statements, online platforms, and dates on which allegedly libelous and defamatory statements about Mr. Richter were published by Defendant, and that Defendant allegedly knew that the statements about Mr. Richter and TBJ were false.[11] The Complaint also alleges that Defendant included in a social media post an altered screenshot of a dismissed criminal case, disguising the dismissal so a viewer would infer that Mr. Richter was the subject of criminal charges or a conviction and made online posts stating that Mr. Richter is a sexual predator and rapist.[12] The Complaint alleges a specific instance on which Defendant made false statements to Argosy Casino in Kansas City, a venue Plaintiff had a contract with, which allegedly resulted in a cancellation of Plaintiff's contract and loss of income.[13]

The Complaint also alleges that Defendant made specific threats of violence against Plaintiff on or around specific dates. The Complaint alleges that Defendant's conduct,

---

[8] *See* Complaint, ¶ 109.
[9] *See* Complaint, ¶¶ 109 and 122.
[10] *See* Complaint, ¶¶ 47 – 48.
[11] *See* Complaint, ¶¶ 53-83.
[12] *See* Complaint, ¶¶ 53, 57, 81, 89.
[13] *See* Complaint, ¶ 74.

characterized as extreme and outrageous, resulted in emotional distress suffered by Plaintiff.[14]

The Complaint alleges that these actions taken by Defendant were both willful and malicious, providing specific instances of false and threatening statements allegedly made to cause harm to Plaintiff.[15]

The Complaint also describes a proceeding initiated by Plaintiff against Defendant in Colorado state court resulting in issuance of a temporary restraining order and a Permanent Civil Protection Order Issued pursuant to § 13-4-106, C.R.S. ("Protection Order") based on Defendant's acts of stalking and threats against Plaintiff and alleges that Defendant has violated the Protection Order a number of times.[16] The Complaint identifies this proceeding as a "Criminal Matter."[17]

Finally, the Complaint states that Plaintiffs have filed a separate civil action against Defendant in Colorado State Court asserting claims for libel *per se*, civil conspiracy, defamation, intentional infliction of emotional distress, and interference with the performance of a contract (the "Civil Matter").[18]

<u>DISCUSSION</u>[19]

Defendant requests the Court to dismiss the Complaint under Rule 12(b)(6), or in the alternative, order Plaintiffs to file a more definite statement of the pleading under Rule 12(e).

---

[14] *See* Complaint Generally.
[15] *See* Complaint Generally.
[16] *See* Complaint, ¶¶ 21- 26.
[17] *See* Complaint, ¶ 21.
[18] *See* Complaint, ¶¶ 35-45.
[19] References to paragraphs of the Complaint in the discussion section demonstrating the factual allegations in support of each claim are representative, not comprehensive. The Complaint contains over 139 numbered paragraphs, with paragraphs 1 – 115 detailing the factual allegations upon which each of the Plaintiffs' claims are based.

-4-

I.      <u>Rule 12(b)(6) Standards</u>

When considering a motion to dismiss, the Court examines whether the Plaintiff has alleged facts sufficient to "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The alleged facts must "nudge[ ] the[ ] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when it has a "reasonable prospect of success, but also . . . inform[s] the defendants of the actual grounds of the claim against them." *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009) (citation and quotation marks omitted). As the Tenth Circuit explained,

> plausibility in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation and internal quotation marks omitted).

For the purposes of ruling on a motion to dismiss, the Court "must accept as true all of the allegations contained in a complaint[.]" *Iqbal*, 556 U.S. at 678. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citation and internal quotation marks omitted). Finally, the Court construes the Complaint's factual allegations in the light most favorable to the Plaintiff. *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178 (10th Cir. 2012).

In considering the Motion to Dismiss, the Court will examine whether the factual allegations in the Complaint are sufficient to support a plausible claim for A) denial of discharge under §727(a); B) defamation and libel *per se*, tortious interference with performance of

contract, and intentional infliction of emotional distress under Colorado state law; and C) non-dischargeability of debt under § 523(a)(6).

A.  Denial of Discharge under § 727(a)

Denial of discharge is a particularly harsh penalty because it prevents a debtor from discharging *any* pre-petition debts.[20] Consequently, denial of discharge is "reserved for a truly pernicious debtor." *Phillips 66 Co. v. Ritchie (In re Ritchie),* 543 B.R. 311, 319 (Bankr. D.N.M. 2015) (quotation marks and citation omitted).[21] Under § 727(c)(1) the trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section. The party objecting to discharge under § 727 bears the burden of proving, by a preponderance of the evidence, that the debtor's discharge should be denied.[22]

Plaintiffs request the Court to deny Defendant's chapter 7 discharge under the following subsections of § 727:  1) § 727(a)(2)[23] (transfer, removal, or concealment of property with intent to hinder, delay, or defraud a creditor);  2) § 727(a)(3)[24] (concealment of, destruction of,

---

[20] *See Blackwell Oil Co., Inc. v. Potts (In re Potts),* 501 B.R. 711, 725 (Bankr. D. Colo. 2013) (acknowledging that denial of discharge is a "harsh penalty") (citation omitted); *Associated Bank, N.A. v. Sever (In re Sever),* 438 B.R. 612, 619 (Bankr. C.D. Ill. 2010) ("A denial of discharge is an extremely harsh and drastic penalty") (citation omitted).

[21] *See also Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir. 1993) ("Completely denying a debtor his discharge . . . is an extreme step and should not be taken lightly.").

[22] *See* Fed.R.Bankr.P. 4005 ("At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."); *In re Brown,* 108 F.3d 1290, 1293-94 (10th Cir. 1997) (preponderance of the evidence standard for claims under § 727(a)(2)(A) and § 727(a)(4)).

[23] Subsection (a)(2) provides:

> The court shall grant the debtor a discharge, unless—
>> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed—
>>> (A) property of the debtor, within one year before the date of filing the petition; or
>>> (B) property of the estate, after the date of filing the petition[.]
>
> 11 U.S.C. § 727(a)(2).

[24] Subsection (a)(3) provides:

> The court shall grant the debtor a discharge, unless—

mutilation of, falsification of, or failure to preserve records from which the debtor's financial condition and business transactions might be ascertained); 3) § 727(a)(4)[25] (false oaths and/or accounts and failure to provide the trustee with recorded information, including books, documents, records, and/or papers relating to his property and/or financial affairs); and 4) § 727(a)(5)[26] (failure to explain loss or deficiency of assets to meet his liabilities).

### 1. § 727(a)(2)

Denial of discharge under § 727(a)(2) requires the objecting party to demonstrate, "by a preponderance of the evidence that (1) the debtor transferred, removed, concealed, destroyed, or mutilated, (2) property of the estate, (3) within one year prior to the bankruptcy filing, (4) with the intent to hinder, delay, or defraud a creditor." *Brown,* 108 F.3d at 1293 (citing 11 U.S.C. § 727(a)(2)(A)).

---

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]
>
> 11 U.S.C. § 727(a)(3).

[25]Subsection (a)(4) provides:

> The court shall grant the debtor a discharge, unless—
>> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>>> (A) made a false oath or account;
>>> (B) presented or used a false claim;
>>> (C) gave, offered, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act
>> or
>>> (D) withheld from an officer of the estate entitled to possession under this title,

any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.]

> 11 U.S.C. § 727(a)(4).

[26]Subsection (a)(5) provides:

> The court shall grant the debtor a discharge, unless—
>> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

> 11 U.S.C. § 727(a)(5).

Plaintiffs argue that Defendant concealed property by failing to disclose and denying ownership of assets, *e.g.*, a Tesla, t-shirt printing equipment, and a 2026 Chevrolet pickup, and that such failures were intended to hinder, delay, or defraud a creditor. Defendant argues that the facts alleged are not specific enough. He argues that Plaintiffs have combined multiple theories under § 727(a) but have failed to "separately and factually plead the elements of any specific subsection[.]"[27] This Court disagrees. The factual allegations in the Complaint do identify specific property that Defendant allegedly concealed. Thus, accepting Plaintiffs' alleged facts as true, they are sufficient to present a plausible claim for denial of discharge under § 727(a)(2).

2. § 727(a)(3)

A debtor's discharge may also be denied if

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records, and papers from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3).

Denial of discharge under this section requires the Plaintiffs to demonstrate, by a preponderance of the evidence, that Defendant "failed to maintain and preserve adequate records and that the failure made it *impossible* to ascertain [the Defendants'] financial condition and *material business* transactions." *Brown,* 108 F.3d at 1295 (emphasis in *Brown*) (citation omitted). *See also The Cadle Co. v. Stewart (In re Stewart),* 263 B.R. 608, 615 (10th Cir. BAP 2001) (same).

As evidence of Defendant's alleged failure to maintain business records, Plaintiffs allege that Defendant failed to maintain and preserve or has concealed records of his gambling

---

[27] Motion to Dismiss p. 3

winnings.[28] Plaintiffs allege that Defendant claimed to have won $22,000 in December of 2025 without disclosing those winnings in this case, reporting on his Statement of Financial Affairs that his only income was from wages/employment, and that he withheld recorded information including books and records relating to his financial affairs from the Chapter 7 Trustee.[29] These factual allegations regarding Defendant's failure to maintain sufficient records documenting his gambling winnings are sufficient to state a plausible claim for denial of discharge under § 727(a)(3).

3.   § 727(a)(4)

A debtor's discharge may be denied upon a finding that "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." § 727(a)(4). A false oath within the meaning of § 727(a)(4) may include omissions from the debtor's petition, schedules, or statement of financial affairs. *See In re Calder,* 907 F.2d 953, 955 (10th Cir. 1990) (acknowledging that "an omission of assets from a Statement of Affairs or schedule may constitute a false oath under section 727(a)(4)(A).") (citation omitted).[30] Denial of discharge under this section requires that the false oath: 1) relate to a material matter; 2) be made knowingly; and 3) be made with intent to defraud. *See Brown,* 108 F.3d at 1294 (denial of discharge based on a false oath requires the creditor to show "by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material

---

[28] *See* Complaint, ⁋ 109.
[29] *See* Complaint, ⁋ 122.
[30] *Quicken Loans, Inc. v. Splawn (In re Splawn),* 376 B.R. 747, 760 (Bankr. D.N.M. 2007) ("Omissions in a debtor's statements and schedules can constitute false oaths within the meaning of § 727(a)(4).") (citing *In re Reed*, 293 B.R. 65, 69 (Bankr. D. Kan. 2003) (remaining citations omitted); *Freelife Int'l, LLC v. Butler (In re Butler),* 377 B.R. 895, 923 (Bankr. D. Utah 2006) ("A debtor's petition, schedules, statement of financial affairs, statements made at a 341 meeting, testimony given at a Federal Rule of Bankruptcy Procedure 2004 examination, and answers to interrogatories all constitute statements under oath for purposes of § 727(a)(4).") (internal quotation marks and citation omitted).

fact.") (citation omitted).  *See also, Calder,* 907 F.2d at 955 ("To trigger section 727(a)(4)(A), the false oath must relate to a material matter and must be made willfully with intent to defraud.") (citation omitted). The materiality requirement is satisfied if the false oath "'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'"  *United States Trustee v. Garland (In re Garland),* 417 B.R. 805, 814 (10th Cir. BAP 2009) (quoting *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 (11th Cir. 1984)).

Debtors have a duty to fully disclose all of their assets in their bankruptcy schedules, without deciding for themselves what is "important enough for parties in interest to know." *Garland,* 417 B.R. at 815 (citation and internal quotation marks omitted).[31]  For this reason, "materiality is not defeated by the fact that the undisclosed property interests are determined to be without value." *Id.* at 814. *See also, Calder,* 907 F.2d at 955 (rejecting debtor's argument that denial of discharge was not warranted because the undisclosed assets were worthless). The requirement that the false oath be made "knowingly" is satisfied if the debtor "deliberately and consciously" signs his or her bankruptcy schedules and statement of financial affairs "knowing that they were incomplete." *In re Retz,* 606 F.3d 1189, 1198 (9th Cir. 2010).

The third element, requiring fraudulent intent, may be inferred from the surrounding facts and circumstances because a debtor is unlikely to admit an intention to defraud.  *Calder,* 907 F.2d at 955-56 (observing that "the debtor will be the only person able to testify directly concerning his intent and he is unlikely to state that his intent was fraudulent[,]" and stating that '[t]herefore, fraudulent intent may be deduced from the facts and circumstances of a case.")

---

[31] *See Butler,* 377 B.R. at 922 ("It is the purpose of § 727(a)(4) to enforce a debtor's duty of disclosure . . . . The trustee and the creditors have the right to information that will allow them to evaluate the case and administer the estate's property.") (internal quotation marks and citation omitted).

(citations omitted).[32] A "reckless indifference to the truth" can satisfy the fraudulent intent requirement for denial of discharge under 11 U.S.C. § 727(a)(4). *See Butler,* 377 B.R. at 922 (observing that "'reckless indifference to the truth . . . has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A).'") (quoting *Boroff v. Tully (In re Tully),* 818 F.2d 106, 112 (1st Cir. 1987)).[33] The Court will not, however, deny discharge if the false oath is the result of an honest error, mistake, inadvertence, or mere inaccuracy. *Brown,* 108 F.3d at 1294-95 (citations omitted).

Plaintiffs allege that Defendant has refused to disclose the address of his residence, and misrepresented his income, his expenses, his assets, and his liabilities. Plaintiffs allege that Defendant never listed Mr. Richter or TBJ, Mr. Richter's company, on Defendant's Schedules D, or E/F.[34] Plaintiffs allege that Defendant intended to withhold information from the trustee, and that Defendant lists different income amounts in his schedules and amended schedules filed in this Court and in his application for a state-paid professional filed in Colorado state court.[35] Defendant argues that these allegations are not specific enough and that Plaintiffs have not made factual allegations sufficient to show that denial of discharge under § 727(a)(4) is plausible. This Court disagrees. Accepting Plaintiffs' allegations as true, Defendant allegedly submitted different income amounts in filings in this Court and the Colorado State court which were not supported by bank statements. Submitting false income information could be interpreted as a

---

[32] *Cf. In re Warren,* 512 F.3d 1241, 1249 (10th Cir. 2008) (discussing actual intent to defraud under § 727(a)(2), and observing that "[b]ecause rare is the occasion when a party lays bare his or her subjective intent, '[f]raudulent intent . . . may be established by circumstantial evidence, or by inferences drawn from a course of conduct.'") (quoting *Farmers Coop. Ass'n of Talmage, Kan. v. Strunk,* 671 F.2d 391, 395 (10th Cir. 1982)).

[33] *See also Stamat v. Neary,* 635 F.3d 974, 982 (7th Cir. 2011) ("a showing of reckless disregard for the truth is sufficient to prove fraudulent intent.") (citations omitted).

[34] *See* Complaint, ¶ 111.

[35] *Id.*, ¶¶ 32, 34.

reckless disregard for the truth, establishing fraudulent intent on the part of Defendant. Further, Defendant's alleged misrepresentation of assets and liabilities, including his failure to identify Plaintiffs as creditors with disputed claims may constitute a knowing omission. If the Court accepts Plaintiffs' allegations as true, they are sufficient to present a plausible claim for denial of discharge under of § 727(a)(4).

4.   § 727(a)(5)

Section 727(a)(5) provides as follows:
(a) the court shall grant the debtor a discharge, unless—
....
(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]
11 U.S.C. § 727(a)(5).

*In re Carlson*, No. 06-8158, 2008 WL 8677441, at *5 (10th Cir. Jan. 23, 2008).

"Neither the Bankruptcy Code nor the United States Court of Appeals for the Tenth Circuit has set forth a standard for determining what constitutes a satisfactory explanation of loss of assets under § 727(a)(5). Other courts have determined that such a finding is left to the sound discretion of the court."[36]

In the Complaint, Plaintiffs allege that if Defendant's assets are as he claimed in his bankruptcy schedules, he has not explained the loss of assets, *e.g.*, gambling winnings, a Tesla, and a 2026 Chevrolet Silverado, and thus has not explained why there is a deficiency of assets

---

[36] *In re Link*, 664 B.R. 832, 860 (Bankr. N.D. Okla. 2024) (citing *Baum v. Earl Millikin, Inc.*, 359 F.2d 811, 814 (7th Cir. 1966); *In re Sears*, 565 B.R. at 192 (citing *Blackwell Oil Co. v. Potts (In re Potts)*, 501 B.R. 711, 726 (Bankr. D. Colo. 2013)); *Pinnacle Agric. Distrib., Inc. v. Gamble (In re Gamble)*, 16-80193, 2018 WL 3629968, at *11 (Bankr. E.D. Okla. July 27, 2018); *In re Spitko*, 357 B.R. at 319).

such that his assets are not sufficient to meet his liabilities. These factual allegations, if accepted

as true, are sufficient to support a plausible claim for denial of discharge under § 727 (a)(5).

B.  The claims under Colorado state law

In the Complaint, Plaintiffs allege that Defendant is liable under Colorado state law for:

1) defamation and libel *per se*; 2) tortious interference with performance of a contract; and 3)

intentional infliction of emotional distress. Defendant argues that the allegations regarding

defamation and libel *per se* are vague and conclusory; that the claim for tortious interference

with performance of a contract fails to identify the contracts at issue, the relevant parties, the

material terms, when Defendant learned of the contracts, what specific acts by Defendant

induced a breach of those contracts, or which contracts were breached. Defendant argues that the

claim for intentional infliction of emotional distress relies on conclusory statements, not

sufficient alleged facts to make the claim plausible. The Court will examine the elements of each

claim under Colorado state law to determine whether the factual allegations in the Complaint are

sufficient to present plausible claims under Colorado state law.

1.   Defamation/libel *per se*

Under Colorado law, defamation by libel *per se* requires: a) publication; b) of a false

statement; c) with reckless disregard; d) actual damages; and e) that the statement be defamatory

as a matter of law.[37]  Publication as to defamation by libel per se "requires only that some person

other than the plaintiff understand the statement."[38] The Supreme Court of Colorado gave

direction as to reckless disregard:

> An actor publishes a statement with reckless disregard when, at the time of
> publication [he or she] believes that the statement is probably false or has serious
> doubts as to its truth.

---

[37] *Denver Pub. Co. v. Bueno*, 54 P.3d 893, 899, n. 8 (Colo. 2002).
[38] *Id.*

*Denver Pub. Co. v. Bueno*, 54 P.3d 893, 899 (Colo. 2002) (internal quotes and citations omitted)

The Supreme Court of Colorado explained what was required for a statement to be defamatory as a matter of law:

> Statements recognized as defamatory as a matter of law inherently require the plaintiff to be the subject of the remark because such remarks must fall into one of four categories, each of which pertain to the plaintiff. These categories include: "(a) a criminal offense ... (b) a loathsome disease ... (c) [a] matter incompatible with his business, trade, profession, or office ... (d) serious sexual misconduct." Restatement (Second) of Torts § 570 (1977).

*Id.* at 899, n. 9.

Plaintiffs allege that Defendant published specific statements on specific online forums that received responses from participants in the forums. Plaintiffs allege that Defendant knew the statements about Mr. Richter were false and supports this with an allegation that, in one post, Defendant included an altered screenshot of a dismissed criminal case, disguising the dismissal so a viewer of the screenshot would infer Plaintiff was the subject of criminal charges or a conviction.[39] Plaintiffs allege specific instances in which Defendant made online posts stating that Plaintiff was a sexual predator and rapist.[40] Plaintiffs allege that Defendant's posts caused people to stop following or subscribing to Plaintiffs' online accounts, decreasing Plaintiffs' earning ability. Plaintiffs further allege that these posts caused the cancellation of Plaintiffs' contract with Argosy Casino in Kansas City resulting in a loss of revenue and caused Plaintiff to suffer reputational and emotional damage.[41] These specific factual allegations, if accepted as true, are sufficient to present a plausible claim for defamation by libel per se under Colorado law.

---

[39] *See* Complaint, ¶ 57.
[40] *See* Complaint, ¶¶ 53, 57, 76.
[41] *See* Complaint, ¶ 74.

2. Intentional interference with contract

Under Colorado Law:

> [t]o be liable for intentional interference with contract, a defendant must 1) be aware of a contract between two parties, 2) intend that one of the parties breach the contract, 3) and induce the party to breach or make it impossible for the party to perform the contract. ... In addition, the defendant must have acted "improperly" in causing the result.

*Krystkowiak v. W.O. Brisben Companies, Inc.*, 90 P.3d 859, 871 (Colo. 2004).

The court in *Krystkowiak* also listed factors to be considered when deciding whether a party acted "improperly:"

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relation between the parties.

*Id.* at n.13.

In the Complaint, Plaintiff alleges that Defendant sent messages to multiple hotels and casinos, which are disclosed in Plaintiffs' appearance and travel schedule and employ Plaintiffs, stating that Mr. Richter was a sexual predator, and Plaintiffs allege Defendant sent these messages intending to cause the cancellation of Plaintiffs' contracts.[42] Plaintiffs allege that Defendant's messages to the Argosy Casino directly resulted in the loss of a contract. Plaintiff alleges that Defendant's statements to the casinos were false and defamatory, and, at least in part, in violation of the Colorado Protection Order.

These factual allegations, if accepted as true, sufficiently present a plausible claim for intentional interference with contract under Colorado law.

---

[42] *See* Complaint, ¶¶ 48, 50, 74 – 78.

3. Intentional infliction of emotional distress

The Supreme Court of Colorado provided the elements necessary to support a claim of intentional infliction of emotional distress under Colorado Law.

> In *Rugg v. McCarty*, 173 Colo. 170, 176, 476 P.2d 753, 756 (1970), we approved the definition of this tort as set out in the Restatement (Second) of Torts § 46 (1965): "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Id.* We applied the Restatement's commentary to hold that the level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*.

*Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999).

A finding of extreme and outrageous behavior is more likely if the conduct is part of a series of incidents or a course of conduct.[43] If the Complaint sufficiently alleges conduct that a reasonable person might find to be extreme and outrageous, the factual determination is left to the fact finder.[44]

The Complaint alleges a series of incidents intended to cause Mr. Richter emotional distress. In the Complaint, Plaintiffs allege that Defendant's multiple communications with and defamatory statements to venues where Mr. Richter was scheduled to appear were intended to cause Mr. Richter emotional distress.[45] Plaintiffs allege that, from early 2023 to mid-2025, Defendant made multiple threats, references to murder, and threats to shoot Mr. Richter.[46] Plaintiffs allege that Defendant posted Mr. Richter's personal information, photographs of Mr.

---

[43] § 23:3. Intentional infliction of emotional distress – Outrageous conduct, 7 Colo. Prac., Personal Injury Torts And Insurance § 23:3 (3d ed.) (collecting cases).
[44] *Rugg v. McCarty*, 173 Colo. 170, 177 (1970).
[45] *See* Complaint, ¶ 49.
[46] *See* Complaint, ¶¶, 68, 69

Richter's family, and videos taken outside of Mr. Richter's home.[47] Plaintiffs allege that Defendant posted threatening messages directed at Mr. Richter coupled with images indicating that Defendant was traveling to Colorado, and that Defendant traveled from New Mexico to Colorado to visit establishments near Mr. Richter's residence.[48] Plaintiffs allege that Defendant admitted in a Colorado court hearing, that he traveled near Mr. Richter's residence and visited nearby establishments.[49]

The Complaint contains sufficient factual allegations, if accepted as true, to present a plausible claim for intentional infliction of emotional distress under Colorado law.

C. Non-dischargeability under § 523(a)(6)

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Non-dischargeability under this section requires proof of both the "willful" and "malicious" elements of the statute. *See Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) ("Without proof of *both* [willful and malicious elements under 523(a)(6)], an objection to discharge under that section must fail."); *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 655 (10th Cir. BAP 1999) ("In the Tenth Circuit, the phrase 'willful and malicious injury' has been interpreted as requiring proof of two distinct elements— that the injury was both 'willful' and 'malicious.'"); *Shirley v. Lopez (In re Lopez)*, 566 B.R. 255, 260 (Bankr. D.N.M. 2017) ("Section 523(a)(6) requires proof of both a 'willful act' and 'malicious injury.'") (citing *Moore*, 357 F.3d at 1129).

---

[47] *See* Complaint, ¶ 90.
[48] *See* Complaint, ¶¶, 70, 72.
[49] *See* Complaint, ¶, 72.

1.  Willful Component of § 523(a)(6)

Without direct evidence of a deliberate or intentional injury, the creditor must prove facts from which the court makes that inference. A court may infer that the debtor intended the consequent injury from a showing that the debtor undertook the act with the belief that the consequences of the act were substantially certain to occur.[50] The Court measures intent under the "willful" component using a subjective standard of the debtor's belief. *Burris v. Burris (In re Burris)*, 598 B.R. 315, 334–35 (Bankr. W.D. Okla. 2019) (citations omitted); *Utah Behavior Servs., Inc. v. Bringhurst (In re Bringhurst)*, 569 B.R. 814, 823 (Bankr. D. Utah 2017).

2.  Malicious Component of § 523(a)(6)

The "malicious" component of § 523(a)(6) requires that the Court examine the debtor's motives and any claimed justification or excuse for taking the action while desiring, knowing or intending that the action will cause the resulting harm. *See Pasek*, 983 F.2d at 1527 ("[T]he debtor's motives, including any claimed justification or excuse, must be examined to determine whether the requisite 'malice' in addition to 'willfulness' is present.") (citations omitted). *See also Schupbach*, 500 B.R. at 36 (discussing the "malice" element and quoting *Pasek*). The "malicious" component of § 523(a)(6) requires conduct more culpable than recklessness. *Sailor Music v. Walker (In re Walker)*, 514 B.R. 585, 589 (8th Cir. BAP 2014) ("Malice requires more

---

[50] *See In re Jensen*, BAP No. CO-18-089, 2019 WL 2403105, at *11 (10th Cir. BAP June 7, 2019) ("[A] creditor must prove facts that support a reasonable inference that a debtor deliberately or intentionally caused injury to the creditor. (citation omitted)); *Bank of Commerce & Trust Co. v. Schupbach (In re Schupbach)*, 500 B.R. 22, 35–36 (Bankr. D. Kan. 2013) (Willful injury under § 523(a)(6) may be established by "direct evidence of specific intent to harm" or "indirectly by evidence of . . . the debtor's knowledge that the conduct will cause particularized injury.") (citations and internal quotation marks omitted). *Cf. Moore*, 357 F.3d at 1129 (citing cases that hold that the "willful" component is satisfied if the debtor believed that the consequences of the act are substantially certain to result from the action taken; *Shaw v. Osborne (In re Osborne)*, 604 B.R. 582, 591 (Bankr. M.D. Ga. 2019) (willfulness is shown if the debtor acted with the desire to cause the resulting harm, with knowledge that the injury would occur, or in the belief that harm was substantially certain to result) (citations omitted); *Burris v. Burris (In re Burris)*, 598 B.R. 315, 334 (Bankr. W.D. Okla. 2019) (The "willful" component requires that the debtor desired to cause injury or believed the injury was substantially certain to occur).

than just reckless behavior by the debtor") (citation omitted); *MarPad, L.L.C. v. Seevers (In re Seevers)*, 574 B.R. 832, 859 (Bankr. D. Neb. 2017) (same); *D'Angelo v. McKean (In re McKean)*, AP 12-6018, 2014 WL 184983, at *5 (Bankr. D. Kan. Jan. 15, 2014) ("Malicious conduct is more culpable than recklessness.") (citation omitted); *Deluxe Motor Co. Inc. v. Hardman (In re Hardman),* AP 10-2015, 2011 WL 5153868, at *4 (Bankr. D. Wyo. Oct. 28, 2011) ("Negligent or reckless acts do not suffice to establish that a resulting injury is willful and malicious.") (citation omitted).

The complaint states a plausible claim under § 523(a)(6). In the Complaint, Plaintiffs allege that Defendant made false and defamatory statements to multiple casinos via online platforms that were intended to cause the cancellation of Mr. Richter's and/or TBJ's contracts with these casinos.[51] These communications are alleged to have caused the cancellation of Mr. Richter's contract with the Argosy Casino with a resulting loss of revenue. The Complaint alleges specific communications Defendant made to specific establishments.[52] In the Complaint, Plaintiffs allege that the defamatory statements published by Defendant caused people to stop following and subscribing to Plaintiffs' online accounts, resulting in a decreased earning ability. A specific statement by a potential subscriber and a response by Defendant are included in the factual allegations.[53] Mr. Richter alleges that Defendant made violent threats against Mr. Richter, at least some in violation of the Protection Order, resulting in emotional distress.[54]

Here, the allegations in the Complaint, if accepted as true, are sufficient to support a plausible claim for a non-dischargeable debt under § 523(a)(6).

---

[51] *See* Complaint, ¶¶, 56, 57, 58, 60,65, 66, 68 , 74, 78, 93.
[52] *See* Complaint, ¶¶ 56, 57, 58, 60.
[53] *See* Complaint, ¶¶ 54, 55.
[54] *See* Complaint, ¶¶, 49, 61, 90, 70, 71.

Under Fed. R. Civ. P. 12(e), made applicable to adversary proceedings by Fed. R. Bankr. P. 7012, a party may request "a more definite statement of a pleading to which a responsive pleading is allowed."  Fed. R. Civ. P. 12(e). In other words, a defendant can ask a plaintiff to provide additional factual details to a complaint so the defendant can formulate an answer. A defendant is entitled to a more definite statement of a plaintiff's claims when the complaint "is so vague or ambiguous that the party cannot reasonably prepare a response." *Id.* Even if the complaint is sufficient to withstand a motion to dismiss for failure to state a claim, a more definite statement may nevertheless be appropriate. *eSoft, Inc. v. Astaro Corp.,* No. 06-cv-00441-REB-MEH, 2006 WL 2164454, at *1 (D. Colo. July 31, 2006). However, a motion for more definite statement is an appropriate remedy only for unintelligible pleadings and should not be used to correct lack of detail. *See Coffey v. McKinley Cnty.*, No. CIV 09-0028 JB/LFG, 2009 WL 3208209, at *1 (D.N.M. Sept. 11, 2009) ("A motion for a more definite statement is used to provide a remedy only for an unintelligible pleading rather than a correction for lack of detail.") (citation omitted); *Martinez v. Naranjo*, 328 F.R.D. 581, 593 (D.N.M. 2018) (stating that a Rule 12(e) motion should not be used to "correct inaccurate assertions, add precision, or flesh out a lack of detail.") (citations omitted).

Here, the allegations in the Complaint are sufficient to give Defendant notice of the factual allegations Plaintiffs contend support a claim for denial of discharge, claims for relief under Colorado state law, and a non-dischargeability claim under § 523(a)(6). The factual allegations in the Complaint are fairly comprehensive and consist of 115 numbered paragraphs alleged in support of Plaintiffs' claims. The allegations in the Complaint are not vague or ambiguous; they are specific. The allegations identify specific assets, income, actions taken by

-20-

Defendant at specific times against specific entities, and specific statements. The factual allegations are not so vague and ambiguous that Defendant would be unable to determine the issues and formulate a response. Accordingly, the Court will deny the request for more definite statement.

CONCLUSION

In sum, the Complaint states sufficient factual allegations, if accepted as true, to support plausible claims (i) for denial of discharge under §727(a)(2), (a)(3), (a)(4), and (a)(5); (ii) under Colorado state law for defamation by libel per se, intentional interference with contract, and intentional infliction of emotional distress; and (iii) for non-dischargeability of debt under § 523(a)(6). Further, the factual allegations are such that a more definite statement is not required. The Court will enter a separate order denying the Motion to Dismiss or for a More Definite Statement. Under Fed. R. Bankr. P. 7012(a)(6)(A), Defendant is required to file his answer to the Complaint no later than 14 days after the entry of this opinion and order.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: July 27, 2026

COPY TO:

Attorney for Plaintiffs
Shay Elizabeth Meagle
6801 Jefferson St. NE
Suite 210
Albuquerque, NM 87109

*Pro se* Defendant
Anthony Lynn Reyes, Jr.
P.O.Box 4223
Gallup, NM 87305

Case 26-01008-j    Doc 12    Filed 07/27/26    Entered 07/27/26 15:35:33 Page 22 of 22